and let those people who have listened patiently so far take this and the last case before us is Lombardo v. Commonwealth of Pennsylvania You must be Mr. Knorr. Yes. You're going to tell us you are. May I please report my name is John Knorr. I'm with the Pennsylvania Attorney General's office and I represent our Department of Public Welfare and its secretary who are the appellants in this case. I'd like if I may reserve three minutes for rebuttal. Yeah. If I may I'd like to touch first very briefly on the question of this court's appellate jurisdiction because the clerk did send out a letter early in the appeal suggesting that perhaps it should be dismissed for lack of an appealable order. We responded to that with a letter which I'm sure the court has. We explained our view that the court clearly does have jurisdiction under the collateral order doctrine. I don't understand my friend Mr. Borland to disagree with that but I know that the court has an obligation of its own to satisfy itself on jurisdiction so I just thought I'd mention it in case there are any questions. If there are not then I'll move on to the merits. Your honors this appeal arises in the context of our. Did you reserve time? Yes your honor I did. Three minutes. Oh okay. Thanks. This appeal arises in the context of our removal of the case from state to federal court and the issue is whether the immunity the sovereign immunity that we would have enjoyed in state court survived that removal. We believe that it did and we believe that the correct rule is that a removing state brings with it whatever immunity if any that it would have enjoyed in the state court system. We think that this rule is fair because it leaves the parties in exactly the same positions that they would have been in with respect to immunity if the case had stayed in the plaintiff's forum of choice. We think that it avoids the odd result that would obtain from the contrary rule where if the state had been sued in federal court it would be immune. If it had been sued in state court it would be immune but nevertheless if it moves from one court to the other suddenly the immunity disappears. Aren't the circuits split on this issue? Arguably yes your honor. As I saw it the 9th and the 10th held the state waived its immunity by removing and the 1st and 4th held it didn't and I don't understand where the 5th circuit is. Well then that makes two of us your honor. Okay. Yeah the 9th and 10th seemed to have adopted a blanket rule that removal waives immunity. The 4th and the 5th seemed to have adopted the contrary rule. We have to be careful because that would mean that we might go up. This opinion might go up. I'm sure this court is always careful your honor. Well yeah. The 5th circuit as you said it was one of those cases where I read the opinion and I thought gee I can see where this is going and then all of a sudden they made a U-turn in their reasoning and they came out the other way but the bottom line for the 5th circuit seems to be the same position we're espousing today. That if a state has sovereign immunity in its own courts it takes that with it to federal court. Now this is different than Lapidus. Everybody agrees that that has something to do with this but there I mean they were trying to regain what they'd already waived right which was their immunity. That's right. In the state courts. The problem with Lapidus was that Georgia was playing games. They started out with no immunity then they invoked the jurisdiction of the federal court said we want to go to federal court. The federal courts have jurisdiction and then turned around and said aha you don't have jurisdiction after all because of the 11th amendment and that's quite different from what we're saying here. Why did you remove it? I can't understand why a state wouldn't have preferred to remain in the state court. Well let me answer your question. The direct answer to your question is I don't know. I wasn't the trial lawyer and I don't know what the tactical considerations were. You know I often hear the point that you just made as a kind of a philosophical point but let me just point out as a former trial lawyer the tactical considerations are if this case stays in state court I'm facing a local plaintiff with a local lawyer in front of a local judge and a local jury. And I represent the nameless faceless bureaucrats in far away much hated Harrisburg. So I'm not sure there's a whole lot to the so-called home court advantage. I think that most courts and most juries do their best to decide cases in accordance with the law and the facts. Didn't you have co-defendants that wanted it removed as well? No at the time the department was the only defendant. But to finish my thought to the extent that there is anything to the home court advantage it's not going to be mine in a case like this. Getting back to Lapidus, in our case we aren't saying the courts don't have jurisdiction, the federal courts. We aren't contesting the application of judicial power of the United States. We brought this case to federal court. We want to be in federal court. We're happy in federal court. And we want the federal court to decide this case. And we wanted to start by deciding the very same question that we would now be presenting to a state court if we were still in state court. You're not claiming immunity from suit. You're claiming immunity from liability. Yes. And is that immunity from liability based upon the 11th amendment or is it based upon the state's sovereign immunity that it had prior to the adoption of the 11th amendment? I'm not sure that there's a whole lot of difference between those two concepts. And that gets us into a very difficult area. But it's based upon Pennsylvania law and the default position in Pennsylvania law is that there is always sovereign immunity unless the general assembly has specifically waived it. And in this case there hasn't been a waiver of that kind. Back to your forum. If you prevail here, doesn't the ADA claim get dismissed and then it gets remanded to state court? No, I don't see why it would be remanded. We aren't claiming that the ADA claim should be dismissed because the court lacks jurisdiction. We're claiming it should be dismissed because we enjoy sovereign immunity after that claim. Well, that's right. Well, if it goes back to the district court, then the ADA claim gets dismissed and all that's left is a state claim. It gets remanded again, right? Actually, that wouldn't be correct in this case because what would be dismissed is the ADA claim for damages. There is still a claim for injunctive relief that would survive. And then there is still a state law claim. The district court, Judge Nealon thought that you gained a litigation advantage by removing. That's what I understood him to be suggesting and therefore he thought you're not entitled to it. What do you think he was saying? To tell you the truth, I don't recall him saying that and maybe you remember better than I do, but I can't think what it might be. Certainly there would be no litigation advantage in terms of immunity because as I said and as I think even Judge Nealon acknowledged, this is the same defense that we would now be proffering if we were in state court and all we're asking the federal court to do is make the same decision that we would be asking a state court to make if we were still there. What he said, at least according to my notes are, that a state may not regain a litigation advantage such as immunity through a change of forum and therefore Pennsylvania is not entitled to immunity on the PHRA claim. That's what my notes were from what he said. Ah, okay. He's talking there about the PHRA claim which is a claim arising under state law and he's quite right and we have never claimed immunity on the PHRA claim. So where would that be? Tell me what happens if we reverse and what happens if we affirm? If you reverse, the federal ADEA claim for damages would be dismissed. The claim for injunctive relief under the ADEA would survive and would go on to a merits disposition. The state law claim under the Pennsylvania Human Relations Act is of course still before the district court and we have a limitations defense that we've asserted there and we win or lose on that and then it would go on. If you affirm, then I guess the whole case just goes back to the district court and we proceed to the merits and whatever other issues there would be with regard to the merits. Wouldn't it be to everybody's advantage to have all the claims in one place at one time because otherwise some are in the federal court and some are in the state court? Well, no. Sorry. Because the federal one would be dismissed? Well, part of the federal claim would still survive. We still have a claim for injunctive relief under the federal act. And that would stay in federal court? And the PHRA claim would be in state court? No, the PHRA claim would stay with the federal case. We removed the entire case. We didn't ask for a remand and there's no reason why we would. The federal court would have pendant jurisdiction over the state law claim, so yeah, everything would still stay together, which as you say, makes a lot of sense, I think. That's if we reverse? Yes, that's if you reverse. We think not only is the rule that we are suggesting consistent with the Lapidese decision, we think of it as actually an extension of Lapidese. That you can harmonize the rule we're suggesting with Lapidese under the general rubric of when a state removes, its immunity status is simply unchanged. If it didn't have any immunity in state court, then it doesn't have any immunity in federal court and that's the Lapidese holding. And we're proposing to extend that a little bit by saying, and if it did have immunity in state court, that too comes with it. I'm sorry, as I read Lapidese, Justice Breyer said for a unanimous court, that a state's voluntary appearance in federal court amounts to waiver of its 11th Amendment immunity. So then the question is, is removal comparable to voluntary appearance? Right? That's the question. For purposes of the 11th Amendment, you know, immunity. If I could come back at you with another quotation a little more precise from the same opinion. Removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the state's otherwise valid objection to litigation of the matter in a federal forum. And that's the extent of the holding of Lapidese. And we are not objecting to the litigation of this matter in a federal forum. We want it to be litigated in a federal forum. It's a distinction between forum immunity and immunity from liability. Yes. Yes. We have waived the one but not the other. And of course that's precisely the question that was left open by the Supreme Court in Lapidese. I see I have 10 seconds left. You use it to your benefit if you can. If there are any further questions, I'll be glad to answer them. All right. Thank you. Thank you. Interesting. May it please the Court, my name is Kimberly Borland. I represent the plaintiff Michael Lombardo. And I think that the preceding exchange between the Court and Mr. Knorr illuminates the essential issues that are presented. And the essential issue is the simple proposition of what is the principle that was the foundation for the unanimous decision by the Supreme Court in Lapidese. And from that, are we able to predict, based on the split in the circuits, which direction the Supreme Court would be likely to go in illuminating a rule dealing with these particular facts. Now granted, the Court in Lapidese limited properly its decision to the specific facts in front of it. And that would have to be the holding that it provided based on what was in front of it at that time. But I submit that there aren't any analytical points contained in Justice Breyer's opinion that would support the rule that is being proposed today by Mr. Knorr. His analysis and his principles established the need for a bright line jurisdictional rule. And that the waiver is a voluntary, the removal, pardon me, is a voluntary invocation of federal jurisdiction. And as such constitutes a waiver. Now what is interesting in the argument to this point is the delicacy with which the phrases sovereign immunity and 11th Amendment are treated. And that's because the issue, the constitutional issue, is the 11th Amendment. And I think Mr. Knorr would agree that the removal, based on Lapidese, constitutes a waiver of any 11th Amendment defense for purposes of the forum. The question is, is that in some form or fashion connected to the sovereign immunity argument that is being made? And of course Mr. Knorr is arguing that they are separate, that there are two forms of immunities here, that there is an 11th Amendment forum immunity and that there is a sovereign immunity as to liability. I didn't understand him to make that distinction. Maybe my colleagues did. I thought he sort of didn't express an opinion as to whether they were the same or not. I certainly don't know. What do you think? Are they the same? I believe that they are the same. And I believe that there is, to my ability to research and to determine, no indication from the Supreme Court that they are separately considered. I forget the date that the 11th Amendment was ratified. It was right after the Chisholm decision. After Chisholm v. Georgia. Isn't it true that states enjoyed sovereign immunity before the ratification of the 11th Amendment? Yes, they did. Then what tells us that they lost it when the 11th Amendment was passed? They didn't lose it. They didn't lose it. This is a waiver case. Truly, it's not a sovereign immunity case. It is a waiver case. I'm looking for some Supreme Court decision or act of Congress that tells us that the adoption of the 11th Amendment subsumed underneath its ambit what was previously known as state sovereign immunity. I think the closest, there isn't a statute and there isn't a holding on that issue. The closest I think that we come to is the area where Justice Scalia and Justice Breyer agree. And that's the College Savings case. And in College Savings, Justice Scalia talks about the history of the 11th Amendment in Chisholm and states, though its precise terms, I'm talking about the 11th Amendment now, though its precise terms bar only federal jurisdiction over suits brought against one state by citizens of another state or foreign state, we have long recognized that the 11th Amendment accomplished much more. It repudiated the central premise of Chisholm that the jurisdictional heads of Article III superseded the sovereign immunity that the states possessed before entering the Union. That has been our understanding of the Amendment since that landmark decision. And specifically stated, we have long recognized that a state's sovereign immunity is a personal privilege which it may waive at pleasure, and he cites Clark and Barnard. Now Clark and Barnard is not a removal case, but Clark and Barnard was a voluntary invocation and intervention case. That's true, but I don't think anybody disputes that the state can waive their sovereign immunity. It's a matter of how in these circumstances. The question is, is the waiver of the 11th Amendment a waiver of sovereign immunity? And isn't there a sub-question? Isn't it possible that it's a waiver of immunity from suit, but not a waiver of immunity from liability? It's possible, but I think that would come into the category of an invention, frankly. And I think that was the difficulty with the Myers case in the Fifth Circuit, in the sense of trying to reach some almost policy determination about how this works. And clearly finding that the waiver principles in Myers said, indeed, the 11th Amendment forum immunity, if that term is invented, exists, is in place here. Well-reasoned, very clear, just as Mr. Norris said, going right down the path to a particular result. And then at the very end, it's possible, without very much analysis, it's possible that there is still liability immunity here. My argument is that that part of Myers is wrongly decided. And the reason is, although it's conceivable that you could do that, there isn't any jurisprudential authority for it. There isn't any basis for saying that that's what belongs there. But doesn't Lapidus give some guidance in that regard? Lapidus talks about being consistent and avoiding anomalies. And it strikes me that your position puts the Commonwealth in a real catch-22. When the Commonwealth is sued in state court on a federal claim, you're depriving it of a federal forum on a federal claim. And that seems generally inconsistent and anomalous, does it not? I don't believe so. The state has the tremendous advantage of being able to cloak itself with sovereign immunity. Well, but if they go to federal court, they lose it. So you're forcing them to litigate a federal claim in a state court. They can litigate the federal claim in the federal court, but they don't take with them that advantage. The analogy that I use is they want to cloak with sovereign immunity in their home court. Mr. Norris says there's no home court in state courts. But, of course, that defeats the whole concept behind even diversity of jurisdiction. There is an advantage to that. And one of the chief advantages is they make themselves, the state makes itself immune. But what if the state is sued on four counts, and they're all federal counts, and two of those counts' state statutes render the state immune, and two of the counts don't? If the state removes that case to federal court, the case proceeds on all four counts. That's correct. They give up something, a valuable right that they possess in state court. So you're forcing a state court, and I understand the state courts have concurrent jurisdiction over federal claims, but isn't there something anomalous about forcing state courts, forcing a case into a state court, that's exclusively involving four federal claims? I don't think the states have a fundamental or exceptional, if you will, claim to having those issues litigated in federal court. I don't believe that they do in view of the other advantages the state enjoys. The state has made a voluntary determination that it wants to go into federal court and give up the ability that it has to control its own defenses with the sovereign immunity. Keep in mind, this removal took place well after Lapidus was decided, and with the knowledge of what the bright-line principles were in Lapidus. And so that decision was made in a knowing way. That's why I consider this to be more of a waiver issue than it is an issue of federal courts, if you will. This is a question that, knowingly, the state decides to go into the federal court. For what advantage? For what reason? And you've suggested that the federal courts It sounds like the same reasons why the diversity statute was adopted in the first place. So they don't get, I know it's ironic to suggest the state's going to get homered in a court of the Commonwealth, but, you know, that was counsel's argument. But it doesn't entitle the state, and that's not the purpose. The purpose isn't to protect the residents of a particular state from its own state courts, or is it to protect the state from its own courts? The issue is really, what's the harm that Justice Breyer, and in fact, Justice Scalia, in the Coleridge-Davis case, was talking about in terms of allowing this kind of activity. And obviously, you know, Mr. Lombardo's case now, with this removal and attempted dismissal, has been delayed. It's been delayed substantially, because we've found ourselves fighting over this issue, over this dismissal in federal court, for well over a year now, as opposed to getting resolution of it in the plaintiff's choice of forum to start with in the state courts. Is there an underlying policy issue that we should address in this whole matter as to whether removing constitutes a waiver of immunity? And if so, what is the policy issue? Well, I believe that the policy issue is that the state keeps its courts open as a sovereign, keeps its courts open to its citizens. As an issue of federalism, there is no particular reason why the states need to have recourse to the federal courts to resolve its own conflicts with citizens of its own state. And the only argument, and Judge Hardiman's point, and I think it's a valid point, but I don't think it carries the day against the other issues, is that the federal courts maintain an expertise of the federal statutes. That's axiomatic, isn't it? I mean, if I have a complicated question of federal law involving a federal statute, don't I want to be in front of a federal judge who deals with those issues all the time, rather than be in a common pleas court? I think that the issue is, as you mentioned at the outset, there is the concurrent jurisdiction that's available. Let's go into that for a minute. Presumably, if Congress meant the case to be decided by the federal court, it would have made exclusive jurisdiction, and it didn't. Once it says that you can bring it into state court as well as federal court, I don't know that that matters, but I don't know. I think it's difficult. I think it goes to the, if you want to call it a hierarchy of rights, and I think the state's rights to be in federal court is very low. What's the exclusive federal issue in this case? He says he was – I mean, let's get to the facts. ADEA, age discrimination, failed to be promoted. Yeah, I mean, which is really not an expertise, kind of. It's not a dormant commerce case. That's one of the interesting points that Judge Neelan made also in his decision, which is he made reference to the fact that the state had waived its immunity with respect to the PHRA claim. The PHRA claim is – the PHRA is analyzed and interpreted in the same fashion as the ADEA. So in this particular case, he pointed that out. And what's the benefit to allow the state to pick and choose statutorily where it will and where it will not waive its immunities? It's saying we are going to waive our immunity to discrimination cases on the basis of age, as long as it's our statute. Now, they're entitled to do that, but then when you start talking about removal and waiver, then you're walking into a new issue, and it's not – the interests of the state are not at the level that requires this kind of gamesmanship. Why is it gamesmanship? They're not – the same claim that they're going to be granted, presumably, immunity in federal court is the claim that they're going to be granted immunity on in state court. The case will proceed similarly in either state or federal court. The only distinction that I see is that when it proceeds in federal court on the residual federal claims, you're going to have a federal judge ruling on federal claims rather than a state judge ruling on federal claims. I don't think that trumps the other issue of having a rule, as Justice Breyer suggests, stating that when the state removes, it removes and does not take with it that immunity because that's the price it's paid as a sovereign from leaving one's own sovereign domain and moving into the national federal courts. Yeah, I'm not so sure the case says that. He made the point that it was already waived. They were trying to get it back. So I'm not so sure it says that. And on the facts, that's correct. And the only argument I make is the analytical language that he uses for the unanimous court. There weren't any concurring opinions that said we're not quite so sure he didn't go too far with this. Analytical language he used was broader than that. So suffice it to say, you'd like us to follow the Tenth and Ninth Circuits. Yes, that indeed is correct, as well as, and I understand it's the unpublished opinion of the Third Circuit. And I don't disagree at all with the position taken even in the earlier argument, except that case was as important to those parties as this case is to these parties, and it was entitled to and received the same deliberation and consideration. So I still think that there was a reason that decision was made, and it was because there was an actual case in controversy. Thank you for your time. Thank you very much. Mr. Knorr? Well, let me start with this business of Eleventh Amendment versus sovereign immunity. I'm not suggesting that they are different. Quite the contrary. I think it's clear that the Eleventh Amendment is one exemplification of a broader concept of state sovereign immunity. But what I do suggest, and what the Supreme Court has said, is that sovereign immunity itself, I think, can best be analogized to the old law school analogy of the bundle of rights. You have whether you can be sued at all, where you can be sued, what remedies might be available, what conditions of precedent might be imposed on a plaintiff, and each of these things a state can waive or retain independently of the others. Counsel, that does bring up a good point. The Supreme Court has been less than clear on this, right? Exactly what sovereign immunity is, what the Eleventh Amendment subsumes. What they themselves have admitted is that they have routinely used the phrase Eleventh Amendment as a convenient but somewhat inaccurate shorthand for a broader concept of state sovereign immunity that goes well beyond the literal terms of the amendment. It isn't part of the problem that the Eleventh Amendment by its terms talks about immunity from suit, whereas the historical concept of state sovereign immunity relates more to liability than suit. Maybe it does also relate to suit, but it also seems to me to relate to liability. It can be both. The Eleventh Amendment speaks in terms of the judicial power of the United States, so it's across the board. If I could get back to the idea of the bundle of rights for a moment, I think it's very significant when you think of immunity in those terms, what the Supreme Court said in Lapidus when they were discussing the limitations on what they were deciding. They said, nor need we address the scope of waiver by removal in a situation where the underlying immunity hasn't been waived in state court. And I think that very much furthers the argument that I'm making today, that you can waive one aspect of immunity but not another, and the question left open in Lapidus is, what's the scope of that waiver? We are suggesting that we waive our right to object to being in federal court. We have no right to say to the federal court, you have no business deciding this case. We want the court to decide this case, but we did retain the right to assert to the federal court the same defenses that we would have asserted to the state court. Judge Sloater asked whether there were policy considerations that the court ought to be thinking about, and I think there are. I think you ought to be thinking in terms of fairness. Is anybody disadvantaged by the rule we are proposing? Would anybody be disadvantaged by the rule my opponent is proposing? Yeah, but the policy might be, well, if the state bothered to remove, then why? We maybe should discourage states from removing? That seems to me a question for Congress to address, Your Honor. If Congress wanted to say that states couldn't remove, they would have excluded us from 1440, whatever it is, offhand. It's true. It's a conundrum. It's clear we have the right to remove, and we've exercised it. I see my time is up. And then I guess he would say, well, once you exercise it, then you should be stuck with it. And I would say, what reason is there to say that just because you remove a case, you lose some defense that you have? But you can't tell us why you removed. Because I don't know. Yeah, I understand. I couldn't figure it out either. But I have suggested in one of the footnotes to my brief several fairly benign reasons why a state might want to remove, and as Mr. Vorlin very correctly points out, it doesn't matter anyway because the motive is completely immaterial. My guess is that there's an automatic reaction by defendants to try to remove without really thinking through, although in the personal injury cases, the lawyers tell me, they're very clear when they want to stay in state court and when they want to remove. Well, if I may, I'll give you my very best guess, is that it has more to do with the electronic filing than anything else. It's just easier. Well, thank you very much, gentlemen. It's an interesting case, and we will think about it. Excellent argument. Thank you both. Thank you. Thank you. Thank you, Linda, as always. You people can pick the stuff up. Thank you.